WARD v. MAGNESS.

Opinion delivered April 8, 1905.

JUDGMENT OF ADOPTION—AMENDMENT NUNC PRO TUNC.—Where, in a proceeding to adopt a child, the probate court found that the child was a resident of the county, but by misprision the clerk failed to enter that fact on the record, such defect may be cured fifteen years afterwards by a *nunc pro tunc* amendment of the record.

Appeal from Independence Circuit Court.

FREDERICK D. FULKERSON, Judge.

Affirmed.

### STATEMENT BY THE COURT.

Johnson and Adams were neighbors in Independence County, and, while hunting together, Johnson accidentally killed Adams. Johnson was childless, and took an infant daughter of Adams to rear as his own after her father's death. The child was only three years old when orphaned, and was cared for by Johnson as his own till her marriage, and afterwards he helped her husband in business matters in a substantial and generous way. When the child, Ida Bell, this appellee, was about fifteen years of

age, and about two years after the General Assembly passed the act authorizing the adoption of children, Johnson decided to have Ida Bell legally adopted. He applied to one of his neighbors a justice of the peace, to attend to the adoption proceedings, and the result was the entry of the following order on February 11, 1887:

"In the matter of the adoption of Ida Bell Adams. Now on this day was presented to the court the petition of J. J. Johnson, verified by his affidavit, which petition is in words and figures following, towit:

"To the Probate Court of Independence County, Ark. At the February term thereof, 1887. To the Hon. A. J. Craig, presiding:

"Your petitioner, John J. Johnson, would represent to your honor that Ida Bell Adams is fifteen years old; that she is not the owner of nor possessed of any property at all; that she has neither father nor mother living, and that I have raised and taken care of her ever since she was three years old. Your petitioner would therefore petition your honor to make an order adopting her the legal heir of him, the said J. J. Johnson, with all the legal rights of a natural born child, and that her name be Ida Bell Johnson, and your petitioner will ever pray.

"Attest: J. W. Six.                                  his
                                            "J. J. (X) JOHNSON,
                                                      mark.

"Subscribed and sworn to before me this 22d day of January, 1887. J. W. Six, J. P.

"And the court, being fully advised in the premises (*and finding that said Ida Bell Adams now resides in Independence County, Ark., and did so reside therein at the time of filing said petition*), doth grant said petition.

"It is therefore considered, ordered and adjudged by the court that Ida Bell Adams be, and she is hereby, decreed by this court, under an act approved February 25, 1885, the adopted child of the petitioner, J. J. Johnson, and that from and after this date the said Ida Bell Adams shall take the name of Ida Bell

Johnson, and shall be entitled to and receive all the rights and interests in the estate of such adopted father by descent or other-wise, the same as if she was the natural heir of J. J. Johnson, the petitioner herein."

The part in brackets and italicized was inserted by *nunc pro tunc* order made on the 3d of September, 1902. About three years after the order of adoption Ida Bell married Magness, and for several years she and her husband lived with Johnson. Johnson married subsequently, and there is evidence that before his death his intentions to leave everything to Mrs. Magness were changed; but, if so, such change was not evidenced by any will, as he died intestate on the 5th of April, 1902. His widow and next of kin proceeded to have the estate distributed, ignoring the adoption of Mrs. Magness. She gave notice that she would apply to the probate court for a correction by *nunc pro tunc* of the order of adoption. The parties in interest resisted this, and the contest terminated by the insertion of the part indicated above. An appeal was taken to the circuit court, and on trial anew there the judgment of the probate court making the *nunc pro tunc* order was affirmed, and appeal was taken to this court. The circuit court also determined at the same time the proper distribution of the estate. As there is no contention in regard to that, other than as it is affected by the adoption of Mrs. Magness, it is not necessary to state any further facts in regard to it.

*Lyman F. Reeder, Yancey & Casey* and *Morris M. Cohn,* for appellants.

The status of the parties was fixed by the death of Johnson. 59 Ark. 483; 64 Ark. 663; 53 Ia. 146; 55 Ark. 30; 6 Col. App. 140; 36 Ill. 114; 101 Pa. St. 96; 3 So. 30; 6 Pac. 512; Wade, Retroactive Laws, § § 159-164; 38 Ark. 487; 67 Pa. St. 341; Cooley, Con. Lim. 382; 23 Wis. 367; 60 Me. 504; 26 Ia. 340; 20 Gratt. 109. An attempt on the part of the Legislature to validate void judicial proceedings is of no validity. 19 Ill. 226; 29 Atl. 604; 79 Ky. 186; 84 Ky. 1; 50 Cal. 388; 40 N. J. L., 383; 20 Tenn. 514; 13 Tenn. 320; 54 Pa. St. 304; 30 S. W. 477. The *nunc pro tunc* order of the probate court is void. 59 Ark. 488;

64 Ark. 663; 28 Gratt. 879; 80 Cal. 219; 75 Tex. 385; 7 Ark. 400; 40 Ark. 163. No presumptions are indulged in favor of the regularity of the proceedings. 59 Ark. 483; 25 Pac. 967; 53 Ill. App. 17; 33 Neb. 509. Outside of mere correction, no amendment would be allowed unless there was some memorandum in the case to amend by. 5 Ark. 208; 17 Enc. Pl. & Pr. 928; 19 Ala. 319; 1 Story, 310; 27 Cal. 491; 20 Ala. 364; 144 Mo. 253; 40 Ark. 224. Appellees are estopped by laches. 14 Ark. 62; 19 Ark. 16; 57 Ark. 142; 41 Ark. 301; 42 Ark. 289; 43 Ark. 469; 56 Ark. 633; 55 Ark. 148. The evidence introduced by appellee was inadmissible. 24 Ark. 251; 94 Ia. 423; 34 Neb. 1; 57 N. Y. 651; 155 Pa. St. 170; 76 Tex. 506; 70 Hun, 48; 51 Ark. 224; 55 Ark. 30; 1 Black, Judg. § 156; 117 U. S. 665; 6 Bush, 65; 25 Pa. St. 218; 50 Mo. 145.

*S. D. Campbell* and *W. S. Wright,* for appellee.

No proper objections were made in lower court. 83 S. W. 1047; 18 Ark. 599; 25 Ark. 552. Courts have inherent power, after the lapse of the term, to correct their records so as to make them speak the truth. 17 Am. & Eng. Enc. Law, 818; Black, Judg. § 156; 134 U. S. 136; 119 U. S. 237; Kirby's Dig. § 4431; 55 Ark. 52; 17 Ark. 100; 9 Ark. 185; 19 Ark. 178; 33 Ark. 218, 489; 51 Ark. 323; 59 Ark. 54; 40 Ark. 224; 35 Ark. 118, 585; 41 Ark. 451; 34 Ark. 291; 23 Ark. 18; 25 Ark. 214; 35 Ark. 278; 12 Ark. 670; 21 Ark. 213; 45 Ark. 240; 51 Ark. 287; 53 Ark. 250; 80 Cal. 62; 51 Cal. 146; 15 How. 91. The amendment may be made upon any evidence satisfactory to the court. Black, Judg. § 165; 60 Am. St. Rep. 51, 748; 53 Am Dec. 189; 70 *Id.* 100; 64 Fed. 609; 17 Ark. 100; 40 Ark. 224; 24 Wis. 477; 95 Ill. 183; 1 Col. 456. Lapse of time does not preclude such a correction of the judgment. 3 Hill, 455; 52 Am. St. Rep. 132; 23 *Id.* 491; 59 Am. Dec. 51; 59 How. Pr. 329; 17 Barb. 224; 75 N. Y. 599; 74 N. Y. 370; 33 Ark. 475; 41 Ark. 453. When the order is amended, the record stands as if it had never been corrected. Freeman, Judg. § 74; 64 Am. Dec. 316; 42 *Id.* 153; 8 Cyc. 765; 15 How. 494; 3 Bush, 261; 56 Minn. 156; 98 Ia. 655; 44 Ark. 365. The amending of a record is discretionary with the court to which such record belongs. 15

Enc. Pl. & Pr. 354; 4 Ark. 624; 13 Ark. 415; 24 Ark. 17; 25 Ark. 10, 97; 32 Ark. 278; 33 Ark. 515; 64 Ark. 663. Upon the whole case the judgment is right. 59 Ark. 483; 19 Ark. 515; 25 Ark. 52; 33 Ark. 294; 44 Ark. 267; Kirby's Dig. § 7817; 84 Ala. 393; 98 Cal. 531; 75 Cal. 213; 119 Ill. 92. Appellants are not in a position to contest the validity of the adoption or to resist the amendment of the record. 141 Cal. 403; 67 Ark. 131; 59 L. R. A. 664; 66 Ark. 448; 73 Ark. 130; 118 Mo. 660; 48 Fed. 21; 59 Vt. 70; 19 Ark. 23; 23 L. R. A. 196; 85 Am. St. 489; 5 Ark. 314; 44 Ark. 93; 33 Ark. 811.

HILL, C. J., (after stating the facts.) The sole question for determination is the amendment of the record by the *nunc pro tunc* order of September 3, 1902. In *Morris* v. *Dooley,* 59 Ark. 483, an order like the one in question was held void on collateral attack because the record failed to show affirmatively that the child was a resident of the county where the order was made. Recognizing the invalidity of the order on its face, the appellee, as soon as she learned its validity was disputed by the widow and next of kin, applied to the probate court to correct the order, alleging that by clerical error it did not speak the truth, and that in truth the jurisdictional fact of residence was shown and adjudicated, and asking that the record be amended to show such to have been the truth of the case. Issue was joined and tried in the probate court and again in the circuit court, each court finding that in fact it was shown and adjudicated that Ida Bell Adams was a resident of Independence County at the time of the original entry.

In *Bobo* v. *State,* 40 Ark. 224, the decisions in this State and elsewhere on amending records *nunc pro tunc* were reviewed by Chief Justice English, and he announced the rule on the subject as follows: "Courts have a continuing power over their records not affected by the lapse of time. Should the record in any case be lost or destroyed, the court whose record it was possesses the undoubted power, at any time afterwards, to make a new record. In doing this it must seek information by the aid of such evidence as may be within its reach tending to show the nature and existence of that which it is asked to establish. There is no reason why the same rule should not apply when, instead of

being lost, the record was never made up, or was so made up as to express a different judgment than the one pronounced by the court. Hence the general rule that a record may be amended, not only by the judge's notes, but also by other satisfactory evidence." This case has often been followed and applied by this court. The evidence upon which the amendment was made in the probate court, and upon which it was sustained in the circuit court, was chiefly of the probate judge who made the order, and Mr. Six, the justice of the peace who procured it. These men knew Johnson well, and knew the child and the circumstances under which Johnson had taken and reared her. A brother of the child had been taken and reared by the wife of the probate judge, and he had been at Johnson's house, and had seen the child an inmate of his household. They were fully cognizant of the fact that the child and Johnson were residents of Independence County, and that the child had always been a resident of that county. Whether evidence of this fact was formally introduced is doubtful, but that in an informal way this fact was brought home to the probate judge, there is no doubt. Whether in fact he made a formal adjudication of the residence of the child is thus stated by him: "The section (of the act) says that where any person desires the adoption of a child he shall file a petition in the county where the child resides. * * * As I stated, it has been a long time; but if the law had not been complied with, I would not have made the order." "Did you notice the act at the time?" "I cannot remember." "When the proceedings came up before you, did you examine the act?" "I believe the order reflected that. I cannot remember every transaction." "If there is an omission in the entry of the order failing to show in what county she resided, was that omission made in your order as probate judge, or is it an error on the part of the clerk in making the entry?" "If the order is not as full as the law requires, it was an oversight on the part of the clerk in making the entry."

Again the judge said: "You investigated at the time to see whether or not she was a resident of the county, so that you could see whether or not you had jurisdiction to make the order?" "I am satisfied I did. If I had not had jurisdiction, I would not have made it."

Mr. Six testifies that he called the attention of the judge to the act, as it was a new act at that time and found in the printed acts. The order itself reflects, as stated by the judge, that the act was brought to the attention of the court. Upon this and other evidence the circuit judge has found as a fact that the jurisdictional part of the order was actually made and omitted by the clerk in writing it up. That finding is conclusive in this court where there is any legally sufficient evidence to sustain it. In view of this evidence and the undisputed jurisdictional element being existent and known to the party procuring and the party making the order, and the evident desire and intention to put into the order every necessary finding to make it comply with the requirements of the act, the court cannot say that the finding of the circuit court is without evidence to sustain it.

The appellants contend that the status was fixed and unalterable by the death of Johnson. The authorities cited are to instances where omitted acts are attempted after the death of a party or the fixing of rights, and properly hold that void proceedings cannot be cured by subsequent acts, such as the filing of the adoption instrument in *Tyler* v. *Reynolds,* 53 Ia. 146, after the death of the adoptive father, when the law required this act of him, and instances on collateral attack, where a void judgment is sought to be amended to prevail over acquired rights, like *Gregory* v. *Bartlett,* 55 Ark. 36, and the subsequent appeal in *Morris* v. *Dooley,* which was affirmed orally in this court. This is not such a case as any cited. These heirs cannot have a vested right in an error. No one acted upon it except Johnson and the adopted daughter. No one changed their position on account of it. The error merely defeats Mrs. Magness of the inheritance vested in her by law. The court has found upon legally sufficient evidence that it was a mere error of the clerk; and, it being clearly within the province of the court to correct such errors, and the correction being made, the order stands as it was originally intended and made, and must be given effect accordingly. 1 Freeman on Judgments, 74; *Galloway* v. *Mc-Keithem,* 42 Am. Dec. 153; *Jones* v. *Lewis,* 47 Am. Dec. 153; *Remick* v. *Butterfield,* 64 Am. Dec. 316.

The judgment is affirmed.